IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BASSIL ABDELAL<br>      Plaintiff.<br><br>v.<br><br>**CITY OF CHICAGO,** a municipal corporation, **MIGUEL TORRES, ROLANDO RUIZ, THOMAS PETRENKO**<br>      Defendants. | Case No: 13-cv-01851<br><br>Judge Rebecca Pallmeyer<br><br>JURY DEMAND |

## PLAINTIFF'S MOTION IN LIMINE TO BAR THE TESTIMONY OF SAMUEL A. BONILLA

NOW COMES Plaintiff BASSIL ABDELAL, by and through his attorney, London Law Group, and moves to bar Defendants' expert testimony of Samuel A. Bonilla, and in support thereof states:

## LEGAL STANDARD

"The purpose of [the Daubert] inquiry is to vet the proposed testimony under Rule 702's requirements that it be 'based on sufficient facts or data,' use 'reliable principles and methods,' and 'reliably appl[y] the principles and methods to the facts of the case.'" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 804 (7th Cir.2012) (quoting Fed.R.Evid. 702). In evaluating whether an expert's proposed testimony meets the Daubert standard, the Court is to "scrutinize the proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley*, 689 F.3d at 805 (quoting *Kumho Tire v. v. Carmichael*, 526 U.S. at 152, 119 S.Ct. 1167).

Whether to admit expert testimony rests within the discretion of the district court. See *Gen. Elec. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, (1997)

In determining whether to allow an expert to testify, the Court may consider whether: (1) the "theory or technique can be (and has been) tested"; (2) the theory or technique "has been subjected to peer review and publication"; (3) "in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and (4) "the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Cage v. City of Chi.*, 979 F.Supp.2d 787 (N.D. Ill., 2013) (citing *Kumho Tire.* at 149–150, 119 S.Ct. 1167 (quoting *Daubert,* 509 U.S. at 592–594, 113 S.Ct. 2786); *Bielskis,* 663 F.3d at 894.)

District courts apply the *Daubert* framework described above using a three-part analysis. *Myers v. Ill. Cent. R.R. Co.,* 629 F.3d 639, 644 (7th Cir.2010). First, the Court must determine whether the proposed witness is qualified as an expert by knowledge, skill, experience, training, or education. If so, the Court must then decide whether the reasoning or methodology underlying the expert's testimony is reliable. If these two requirements are met, the Court must assess whether the expert's proposed testimony will assist the trier of fact in understanding the evidence or to determine a factual issue. *See Cage, supra,* at 799 (*citing Myers,* 629 F.3d at 644 (*citing Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir.2007)))

**ARGUMENT**

**Samuel Bonilla's Testimony Does Not Meet the Requirements Set Forth in *Daubert* as it is Unreliable and Irrelevant.**

According to Bonilla's expert opinion report, Bonilla is a firearms instructor at the Suburban Law Enforcement Academy in Glen Ellyn, Illinois for the basic recruit academy and police officer with the Bloomingdale Police Department. (Opinion at 2). He has not testified as an expert witness in the past 4 years and there is *no indication from his report or CV that he has in fact ever testified as an expert witness in any civil case*. (Id. at 7.) He has also not written or published any *peer reviewed* articles. Thus, none of his opinions have ever been scrutinized for reliability by his peers or fellow officers.

Bonilla's testimony does nothing to aid the trier of fact with the issues in this case. First, Bonilla's testimony is irrelevant. How Bonilla trains his officers at Suburban Law Enforcement Academy is entirely irrelevant to whether the defendant officers violated the plaintiff's Fourth Amendment constitutional rights by using excessive force. Thus, for instance, Bonilla's opinion of how he trains officers to not use their squads as cover has no bearing on the issues. All of Bonilla's opinions are based on his training techniques at his academy, but there is no opinion that this is how the City of Chicago trains their officers or how the individual defendants were trained or that such training procedures are commonly accepted as known or reasonable to employ in any peer-reviewed articles, journals, or learned treatises.

In fact, Bonilla admits he is unaware of nationwide and common procedures used to train officers. He cites the Illinois Law Enforcement Training and Standards Board certification exam to support his position that the "fire twice and evaluate" method is not

how Illinois officers are trained in using deadly force. (Opinion at 4) He said that he disagrees with Dr. Williams that this method (also known as the "double tap" method) does "not reflect current training in situations in which officers can use deadly force." (Opinion at 4.) However, the training at Bonilla's academy is irrelevant to this issues in this case because casting such training as a proper procedure for officers to follow in using deadly force does nothing to help the jury determine if deadly force was appropriate or reasonable under the circumstances in this case.

Bonilla then states that he is *aware* of studies and date from the Force Science Institute which demonstrative "how quickly a suspect can elevate a gun and use a weapon against an officer." (Opinion at 5.) However, he does not provide any reference, documentation, and/or citation for these studies, including, but not limited, to the study title, author(s), or date of these studies, any hyperlinks to them, or whether these studies have been peer reviewed. He does not provide or cite any known or potential rate of error with such statistics which is essential for a lay person to know to determine the variability with which such statistics are measured especially as the higher the error rate (based on the sample size of the population and faulty measurement techniques), the less reliable such statistics are. As such, Bonilla's opinion without any specific supporting documentation, error rates, authorship, and/or article citation references of these purported studies to back-up his numbers is highly unreliable and speculative.

Moreover, Bonilla opines repeatedly of how he trains his officers and recruits at his academy. Such testimony is highly irrelevant to this case. First, Bonilla does not state whether the defendant officers were trained at his academy or whether the

4

defendant officers would have received the identical training he provides. He does not state whether the City of Chicago Police Department sends its recruits to his academy. Thus, it would be highly prejudicial and confusing to a jury to hear how officers and recruits are trained at Bonilla's academy and then erroneously assume that is how the defendant officers were trained and/or should be trained.

Second, the issue is not what state or local police procedures the defendant officers were supposed to or trained to undertake, but whether the force used under the circumstances was objectively reasonable which does not require expert testimony. See *Thompson v. City of Chicago*, 474 F.3d 444 (7th Cir., 2006) The question of "whether a police officer has used excessive force in arresting a suspect is a fact-intensive inquiry turning on the reasonableness of the particular officer's actions in light of the particular facts and circumstances of the situation faced." *Thompson* at 458 (*citing DeLuna v. City of Rockford*, 447 F.3d 1008 at 1010 (7th Cir. 2006)

What is "reasonable under any particular set of facts is 'not capable or precise definition or mechanical application." *Id*. (*citing Abdullahi v. City of Madison*, 423 F.3d 763 at 768 (7th Cir. 2005)). Consequently, Bonilla's opinion of how officers are trained at his academy sheds no light for the trier of fact as to whether the defendant officer's actions were objectively reasonable under the circumstances since police procedures and training vary across the nation, jurisdiction, and precinct as there are no single uniform standard police rules and procedures. Thus, the fact that Bonilla does not teach the "double point method" as Dr. Williams has discussed in his opinion does not help the trier of fact determine if the defendant officers used excessive force, acted objectively reasonably under the circumstances, or reasonably feared for their lives as opposed to

5

engaging in a rush to judgment of the actual circumstances.

Third, nothing in Bonilla's opinion suggests that his opinions are the product of reliable principles and methods. The fact that Bonilla disagrees with Dr. James Williams is also highly irrelevant as Bonilla's opinion does not help the trier of fact to evaluate *any* of the issues in this case. Again, how Bonilla trains his officers and recruits has no bearing on the material issues in this case--whether the defendant officers violated the plaintiffs' Fourth Amendment rights under 42 U.S.C. §1983 or engaged in a conspiracy to cover-up their misconduct. Thus, Bonilla's Opinion B and C, based on how he trains officers and recruits at the Suburban Law Enforcement Academy and at the Bloomingdale Police Department, are entirely irrelevant, unreliable, and would not help the trier of fact given that use, compliance, or violations by the defendants of these local police procedures and local training has no bearing on the constitutional issues in this case and should be excluded as a matter of law.

Moreover, the Tenth Circuit noted that "'violations of state law and police procedure generally do not give rise to a 1983 claim' for excessive force." 399 F.3d at 1222 (*quoting Romero v. Bd. of Cnty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995)). In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." *Whren v. United States*, 517 U.S. 806, 815 (1996).

Furthermore, Bonilla is not qualified to testify to nationally accepted police practices[1] and his testify is irrelevant and confusing to the jury. Moreover, the probative

---

[1] Testimony of nationally accepted police practices can be admitted. For instance, see *Zuchel v. City and County of Denver*, 997 F.2d at 742-43 (affirming district court's admittance of expert

6

value of these opinions are substantially outweighed by prejudice to the plaintiff in violation of F.C.R.P. 403 since the defendant officers conduct is being measured relative to local and state procedures which have absolutely no bearing on establishing constitutional violations. All Mr. Bonilla has done is recite the local legal standard for when an officer may use deadly force using local police procedures (Opinion A at 4), but he does nothing to apply such principles to the facts in this case.

Bonilla cites Abdelal's testimony for how he picked up a weapon dropped on the sidewalk by one of the robbers who fled. He then states, "Under these rapidly evolving circumstances, the officers must assume that the use of the weapon is an imminent threat regardless of whether the weapon is pointed." (Opinion at 5). Bonilla then misquotes and mischaracterizes Abdelal's testimony stating that Abdelal "think he touched the trigger but it was locked." (Opinion at 5.) To the contrary, Abdelal testified: "*I don't --- think I touched* – it was locked, the gun. It was locked. I don't remember." (Abdelal at 117:22-23) Thus, Bonilla does not apply and use the actual facts.

Bonilla then states that this opinion is based on how he trains officers at the Suburban Law Enforcement Academy, his training and experience, and some statistics from the Force Science Institute he is "aware of." *Id*. Bonilla does not state what the Force Science Institute is or what the Force Science Institute does. Nonetheless, all his bases for his opinion are unreliable and/or irrelevant. As discussed, how Mr. Bonilla trains officers and recruits at his academy is irrelevant to the issues in this case and does not have any bearing on the underlying issues before the jury. Mr. Bonilla's own training and experience is irrelevant as he provides no details of any cases or actual

---

testimony on generally accepted police customs and practices) Cf. *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir. 2005); See also *United States v. Rodella* (D.N.M., 2014)

situations he personally was encountered that parallel or are similar in any way to the specific situation that the defendant officers purportedly encountered. Consequently, he cannot help the trier of fact to understand such a situation from the perspective of the defendant officers.

Mr. Abdelal testified he never pointed a gun at the officers and in fact never even saw officers before he was shot multiple times. (Abdelal Dep. at 112:22-24, 113:4-12) Bonilla does not state why any lesser means of force were not or could not be employed by the defendant officers. He cites no peer reviewed evidence that refutes anything that Dr. James Williams has given an opinion about. Moreover, he cites no peer reviewed articles, treatises, case law, or statutes that support his opinion that "officers *must* assume that anyone holding a gun poses an imminent threat regardless of whether the weapon is pointed." Even if the foundation for such opinion could be laid to determine that it was reliable, Bonilla cites no facts that support that the officers' lives were in any way placed in imminent danger by Abdelal especially since Abdelal never even saw or heard any officers before he was shot.

Finally, as stated, Bonilla provides no supporting references for his purported cited statistics or any of their associated error rates. Under Rule 403, the probative value of such an opinion is substantially outweighed by the danger of unfair prejudice" and could also cause jury confusion since a jury would likely be led to believe that "under *any* rapidly evolving circumstances," it is reasonable and appropriate to use deadly force if any officer see someone holding a gun negating and contravening the fact-intensive inquiry required under *Thompson, supra*. In particular, a jury could be erroneously led to believe that use of deadly force (as taught at the Suburban Law Enforcement

Academy) can never be excessive or unreasonable if officers only see an individual holding a gun downward (not pointed at them) when arriving to a crime therefore taking away such a determination from the jury. Thus, Mr. Bonilla's opinions, including, but not limited to, Opinions A at 4, B at 5, and C at 6. do not meet the *Daubert* requirements and the requirements of Rule 702. They are unreliable, based on local police procedures and training, not helpful to the trier of fact to the specific issues in this case, and have no bearing or relevance to the Fourth Amendment claims in this case.

## **CONCLUSION**

WHEREFORE, for the aforementioned reasons, Bonilla's testimony does not meet the *Daubert* requirements. Therefore, the plaintiff prays that Bonilla's testimony be barred.

Respectfully Submitted,

BASSIL ABDELAL

/s/ Justin London_____
Plaintiff's Attorney
Justin London

LONDON LAW GROUP
1920 N. Maud, Ste. A
Chicago, IL 60614
(773) 528-1433
Attorney No: 629325