**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BASSIL ABDELAL, | ) | |
| | ) | No.    13 CV 1851 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Rebecca Pallmeyer |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT MOTIONS *IN LIMINE*

Defendants jointly move *in limine* to bar evidence/argument on the following topics:

### Motion *in Limine* # 1 – Police-Involved Shooting of Robbers

Evidence regarding the police-involved shooting of any person other than Plaintiff should be barred because it is irrelevant, time-consuming and more unfairly prejudicial than probative.

This incident began when three armed men barged into Plaintiff's store, held Plaintiff and Khader Aruri (Plaintiff's father-in-law) at gunpoint, and stole the contents of the cash register. A total of six CPD officers heard the radio announcement of an armed robbery in progress and responded to the scene. Four tactical officers (Defendant Officer Ruiz and non-defendant Officers Cifuentes, Jones and Duran) arrived first in one vehicle; Defendant Officers Petrenko and Torres arrived in a second vehicle shortly thereafter.

As the four tactical officers approached the store's front door, the robbers suddenly ran out of the door one at a time. Officer Duran chased after the first robber while Officers Cifuentes and Jones chased the second and third robbers. As Defendant Officer Ruiz stood in front of the store and Defendant Officers Petrenko and Torres crossed the street toward the store, Plaintiff came out of the store holding a large revolver out in front of him, pointed in the

direction of Defendant Officers.[1]  All three Defendant Officers fired several rounds at Plaintiff, after which Plaintiff dropped the gun and retreated back into the store.

While Defendant Officers Ruiz and Torres approached the store to secure Plaintiff, Defendant Officer Petrenko joined the three tactical officers as they pursued the robbers through the parking lot.  The officers believed the robbers were still armed.  Petrenko ran after the first robber, who reached toward his waistband, turned back and raised his arm toward Petrenko.  Believing the robber was pointing a weapon at him, Petrenko shot and wounded him.  Non-defendant Officers Cifuentes and Jones chased the third robber, yelling at him to show his hands.  When they saw the third robber extend his arm toward them with an object in his hand, both Officer Cifuentes and Officer Jones fired at the third robber, who was wounded.  A subsequent search of the robbers' persons revealed no weapons.

The subsequent shootings of the two robbers are dissimilar and irrelevant.  Plaintiff admits he was holding a gun when Defendant Officers shot him, whereas it seems likely (with the benefit of hindsight) that the two wounded robbers had dropped all their weapons by the time they were shot by police.  Neither Plaintiff nor Defendant Officers Ruiz and Torres were involved with or even saw the shootings of the robbers.  Given the dissimilarity between the two situations in which Officer Petrenko used force that night, evidence of his shooting of the robber could only be offered to suggest a propensity to use lethal force, which violates Fed. R. Civ. P. 404(b).  This would be particularly unfair in light of the fact that, until that night, Officer Petrenko had never discharged his weapon in his 12-year career.

Admitting this evidence would also triple the length and complexity of the trial.  Defendants would be forced to present the equivalent of two additional trials to prove that the use of force by Officers Petrenko, Cifuentes and Jones was justified by the actions of the robbers

---

[1] Plaintiff admits he was holding the revolver, but claims he was holding it down at his side, pointed at the ground.

– and four of the five actors are not even parties to this lawsuit. Indeed, neither of the robbers have sued or complained about their shootings, and the civil statute of limitations has run. The complexity is exacerbated because (1) all three robbers are still incarcerated awaiting prosecution on charges arising from this incident, and would likely invoke their Fifth Amendment right if called to testify; and (2) testifying about the shootings could also implicate the three officers' legal rights because the Independent Police Review Authority has not yet closed the investigation into the incident. If the three officers were forced to invoke legal rights and protections in front of the jury, the Defendant Officers (two of whom had absolutely nothing to do with shooting the robbers) would be irretrievably and unfairly prejudiced.

Evidence of the robbers' shootings can be seamlessly excluded simply by keeping testimony focused on Plaintiff. The testimony of Plaintiff and Defendant Officers Torres and Ruiz would not be affected at all because none of them saw the subsequent shootings. Officer Petrenko's testimony could end at the point when he turned his attention away from Plaintiff and joined the pursuit of the robbers. Indeed, non-defendant Officers Cifuentes, Duran and Jones need not testify at all. None of them saw Plaintiff or his shooting. Their only relevant testimony relates to mere seconds that elapsed between their arrival at the scene and their pursuit of the robbers. The events that occurred in that brief timeframe are undisputed, and anything they observed or did in that time was also observed by Plaintiff and/or Defendant Officer Ruiz, who will necessarily testify at trial. Any relevant testimony from Officers Cifuentes, Duran and Jones would therefore also be cumulative.

If admitted, Plaintiff would use this evidence to overtly encourage the jury to unfairly conclude that police officers have a propensity to use lethal force, and to punish Defendant Officers as a result. Defendant Officers cannot and should not be held liable for the actions of

another person, just as Plaintiff should not be rewarded for injuries suffered by someone else. *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); 745 ILCS 10/2 204. This irrelevant evidence has no probative value, will mislead and confuse the jury, and must be excluded to prevent unfair and irreparable prejudice. Fed. R. Evid. 401-404.

## Motion *in Limine* #2 – Union Representatives and Media Reports

Media reports about the incident (PX 15) and testimony from Fraternal Order of Police representatives Saul Del Rivero and Pat Camden (also PX 12) should be barred because their testimony is irrelevant hearsay that could unfairly prejudice Defendant Officers.

Plaintiff claims that Del Rivero and Camden made false statements about him and the incident to the media. There is no evidence that anyone intentionally gave false information to the media. Even if such evidence existed, it would be irrelevant hearsay because (1) neither Del Rivero nor Camden were present during or have personal knowledge of the incident; (2) there is no evidence that Del Rivero or Camden received their information from or even spoke to Defendant Officers; (3) the manner in which the media reported on the incident has no bearing on whether Defendant Officers used excessive force; (4) there is no defamation claim in this case; and (5) neither Del Rivero nor Camden are defendants. Defendant Officers made no statements to the media, and cannot be held liable for the actions of other people. *Eades*, 823 F.2d at 1063. This evidence should be excluded. Fed. R. Evid. 401, 403 and 801.

**Motion *in Limine* #3 - Alleged Post-Shooting Mistreatment**

Defendants anticipate Plaintiff will testify he was harmed after the shooting when unidentified officers handcuffed him intermittently and allegedly told his father-in-law not to touch Plaintiff or care for Plaintiff's wounds, and also by being treated in the same hospital emergency room as one of the robbers. Evidence and argument related to purported post-shooting mistreatment should be barred because Defendant Officers were not involved with it or present for it. Fed. R. Evid. 401, 403.

Plaintiff will likely testify that, after the shooting, he was handcuffed at three different points: inside his store, in the ambulance, and at Mt. Sinai Hospital. However, Plaintiff testified in his deposition that he could not describe the officer who handcuffed him at the store, and the handcuffs were applied in the ambulance and at the hospital by one or more unidentified detectives. Ex. A at 128:6-14, 129:7-18, 172:20-173:2, 174:5-14. Defendant Officer Petrenko never entered the store. Ex. B at 78:12-13. Although Defendant Officers Ruiz and Torres entered the store after the shooting, they did not handcuff Plaintiff -- Officer Juan Duran did. Ex. C at 59:1-19; Ex. D at 161:20-162:8. None of the Defendant Officers went in the ambulance or to the hospital, and thus none had any involvement with or control over Plaintiff being treated in the same emergency room as one of the robbers. Ex. C at 63:7-64:1; Ex. D at 162:9-14; Ex. B at 239:17-240:19. Similarly, Plaintiff does not know who allegedly told his father-in-law not to care for Plaintiff's wounds, and does not know who any of the Defendant Officers are. Ex. A at 127:11-24, 177:2-9. Defendant Officers deny telling his father-in-law not to touch Plaintiff or care for Plaintiff's wounds. *See* Answer (Docket #30) at ¶ 18.

Because "[e]ach individual defendant can be liable only for what he or she did personally," none of these events are relevant to Defendant Officers' liability. *Eades v.*

*Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987). Evidence of bad acts allegedly committed by other unknown police officers or hospital staff has no probative value, and would unfairly prejudice Defendant Officers by potentially causing the jury to sympathize with Plaintiff and/or impermissibly punish them for the acts of others. Fed. R. Evid. 403; *Cooper v. Cassidy*, 12-C-5104 (Ex. E at 18:10-19:17) (alleged statements of non-defendant officers inadmissible).

### Motion *in Limine* #4 - Duplicative and Non-Cognizable Claims

It is well established that "a plaintiff may receive only one full compensation for his or her injuries, and double recovery for the same injury is not allowed." Duran v. Town of Cicero, 653 F.3d 632, 639 (7th Cir. 2011). Plaintiff seeks compensation for being shot by Defendant Officers, and he "can only recover for [his] injuries once, regardless of the number of claims." *Adams v. City of Chicago*, 2014 WL 262115, *6 (N.D.Ill. 2014). Therefore the jury should only consider the § 1983 excessive force claim. Nonetheless, Plaintiff refuses to cull any of the Second Amended Complaint's ten unnecessary claims that are non-cognizable, time-barred, duplicative and/or completely unsupported by any evidence. Therefore, pursuant to the Court's instruction at the September 2, 2015 status hearing, Defendants move to bar Plaintiff from presenting evidence, argument or instructions on Counts II-VII and IX-XII.

Plaintiff's state-law negligence, negligent infliction of emotional distress and "willful and wanton conduct" claims (Counts V, XI and VI) are facially non-cognizable. The Tort Immunity Act renders municipalities and public employees immune from claims sounding in negligence. *See* 745 ILCS 10/2-202; *Harris v. Thompson*, 2012 IL 112525, ¶¶ 25-26 (Ill. 2012). "Willful and wanton conduct" is not a claim recognized in Illinois law. *Sparks v. Starks*, 367 Ill.App.3d 834, 837 (1st Dist. 2006).

All state-law claims (Counts II-VI and XI-XII) against Defendant Officers are barred by the Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8-101. The shooting occurred on March 14, 2012. Officers Torres, Petrenko and Ruiz were first named as defendants in Plaintiff's Second Amended Complaint filed on July 10, 2013.

Plaintiff's § 1985(2) conspiracy claim is plainly inapplicable to the facts of this case, and supported by nothing but baseless speculation. 42 U.S.C. § 1985(2) prohibits conspiracy to interfere with federal and state "court proceedings in violation of equal protection of the laws or when a person is trying to enforce equal protection of the laws." *Hobbs v. Cappellutti*, 899 F.Supp.2d 738, 773-74 (N.D.Ill. 2012). To prevail under § 1985(2), Plaintiff must allege and prove "that 'the defendants were motivated in their actions by racial or some other type of invidious, class-based discrimination." *Id.*, quoting *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985). Plaintiff has never even alleged that Defendant Officers were motivated by discrimination, nor is there any evidence of that nature whatsoever. Also, the alleged conspiracy could not further a constitutional violation because it purportedly took place **after** the shooting. Plaintiff has no evidence whatsoever that Defendant Officers conspired with anyone to do anything, whether before or after the shooting. Additionally, this claim is barred by the intra-corporate conspiracy doctrine: as a matter of law, a conspiracy cannot exist solely between members of the same entity, such as the Chicago Police Department. *Wright v. Illinois Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Tabor v. City of Chicago*, 10 F.Supp.2d 988, 994 (N.D.Ill. 1998) (doctrine applicable in § 1983 cases; collecting cases).

Plaintiff has no evidence to support his state and federal false arrest claims (Counts II and VII). As discussed above in Motion #3, the evidence shows that none of the Defendant Officers ever handcuffed Plaintiff. Defendant Officers' only action toward Plaintiff was shooting him.

Both the seizure and use-of-force aspects of the shooting are covered by Plaintiff's Fourth Amendment excessive force claim (Count I).

Plaintiff's excessive force claim also renders Plaintiff's false arrest, battery, assault, and infliction of emotional distress claims (Counts II-IV, VII and XI-XII) duplicative. As discussed in Motion #5, Count X (indemnification) is also unnecessary. "The court may strike from a pleading…any redundant [or] immaterial…matter" pursuant to Fed. R. Civ. P. 12(f), or enter judgment on the pleadings pursuant to Rule 12(c).

Plaintiff can only be compensated for his injury once. *Duran*, 653 F.3d at 639. "The Seventh Circuit has indicated that duplicative claims should be dismissed…Claims are duplicative if they are based on the same operative facts and allege the same injury." *Kurtz v. Toepper*, 2012 WL 33012, *1 (N.D.Ill. 2012) (citations omitted). "Damages are not assessed 'by defendant' or 'by claim' but 'for' an injury." *Duran*, 653 F.3d at 640. Duplicative claims serve only to mislead the jury and encourage them to award. Furthermore, unnecessary and duplicative claims will necessitate longer and more complicated jury instructions and arguments, which wastes time and increases the risk of error.

### Motion *in Limine* #5 - Indemnification and the City of Chicago

Defendants move to bar all references to indemnification or to the City of Chicago as a party. In every Answer it has filed, the City of Chicago has admitted that Defendant Officers were acting within the scope of their employment at all relevant times; therefore, the City of Chicago is required by both state law and Defendant Officers' collective-bargaining agreement to indemnify compensatory damages awarded against them. *Bruce v. City of Chicago*, 2011 WL 3471074, *3 (N.D.Ill. 2011). Defendant Officers would also be unfairly prejudiced because "jurors may be more likely to find for Plaintiff on liability or inflate a compensatory damages

award if they knew that Defendants themselves would not be on the hook financially." *Id.*, citing *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) ("[i]n the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government—not the individual defendants —is footing the bill").

As the City of Chicago has done from the outset of this case, the municipal defendant in *Duran v. Town of Cicero* stipulated that the defendant officers had acted within the scope of their employment at all relevant times. 653 F.3d at 639. In reversing the district court's ruling and vacating the judgment, the Seventh Circuit held that "the issue of the Town's liability should not have been submitted to the jury at all." *Id.* "Once the Town conceded that its officers were acting within the scope of their employment, the Town's liability…became a postverdict legal issue for the court; the jury should not have been asked to answer any questions about the Town's liability in the first place." *Id.* at 640. The same reasoning applies in this case.

### Motion *in Limine* #6 - IPRA's Post-Shooting Investigation

Evidence of the Independent Police Review Authority's post-shooting investigation should be excluded. Investigations or conclusions made by a third-party fact finder after the incident is irrelevant; the sole finder of fact at trial is the jury, which must reach an independent decision based on evidence from witnesses with first-hand knowledge of the incident. Furthermore, the very fact that an investigation was opened is unfairly prejudicial; that fact could mislead the jury to believe that IPRA believed or at least suspected that Defendant Officers had engaged in misconduct simply because an investigation was opened. Moreover, IPRA's mission is to investigate officers for violating CPD regulations, not citizens' constitutional rights. Therefore, the probative value – if any – of evidence relating to the underlying investigation is substantially outweighed by the unfair prejudice to Defendants. *See* Fed. R. Evid. 402 and 403;

*See also Bruce v. City of Chicago*, 2011 WL 3471074 at *6 (N.D. Ill. July 29, 2011)("The potential prejudice from testimony about the IPRA investigation substantially outweighs its questionable probative value"). This evidence, including testimony of IPRA investigator Brian Killen, should therefore be excluded.

Several witnesses gave recorded statements to IPRA. Defendants have no objection to the use of these statements for purposes of impeachment or refreshing recollection, so long as references to the statements are phrased neutrally without reference to IPRA or an investigation (e.g. called a "prior statement"). In a similar vein, references to the standard Fraternal Order of Police disclaimer given by all officers at the outset of their IPRA statements should be barred. An example is attached as Ex. F. During IPRA interviews, all officers are represented by union attorneys, who routinely instruct all officers to note for the record that they are giving the statement under duress in compliance with a direct command. The purpose of the disclaimer is to safeguard against introduction of officers' statements as evidence against them in any future criminal proceedings. To a layperson, the disclaimer is hugely prejudicial because it sounds ominous and seems to indicate that the officer does not wish to cooperate with IPRA's investigation. The prejudice would then be compounded because Defendant Officers could not explain why they made the disclaimer without (a) waiving attorney-client privilege and (b) inadvertently suggesting that they anticipated or feared criminal prosecution as a result of the incident. Additionally, Defendants would be forced to waste time presenting union witnesses and documents to explain the disclaimer.

Magistrate Judge Schenkier recently ruled that the disclaimer was inadmissible:

> We find the disclaimer – and the related fact that the IA [Internal Affairs] statements are given under compulsion – irrelevant to the veracity of any assertion made in an IA statement. We note that just as CPD supervisors may compel officers to give IA statements, a court may compel witnesses to appear to testify

by use of a subpoena, and sanction those who do not comply. We find no support for the proposition that a witness who is compelled to testify in court is more likely to testify falsely than is a witness who voluntarily testifies in a proceeding. Similarly, there is no evidence that the disclaimer affects the veracity of an officer's statement, or that its inclusion would lead them to make false statements or claims with respect to this incident.

*Robinson v. City of Chicago*, 11 C 4528, 2013 WL 3716651 at *1 (N.D.Ill. July 15, 2013). All

references should be barred pursuant to Fed. R. Evid. 401 and 403.

### Motion *in Limine* #7 – Defendant Officers' Prior Lawsuits or C.R.s

All references to any unrelated lawsuits or Complaint Register Files ("C.R.s") should be

barred pursuant to Fed. R. Evid. 401-404 and 801. Allegations that Defendant Officers engaged

in misconduct toward other people in other situations is not relevant to whether they used

excessive force against Plaintiff. The only possible purpose is to suggest that Defendant Officers

have some propensity for misconduct, which violates Fed. R. Evid. 404 (b).

In particular, Plaintiff's counsel intends to present evidence of a now-overturned

administrative finding against Officer Petrenko, as well as testimony from witnesses associated

with past complaints against him. As a threshold matter, Clifford Trimble, Abigale Walls,

Deborah Mapp, and Calvin Cobbs should be excluded because Plaintiff never disclosed or even

mentioned any of these witnesses until October 9, 2015, a year after the close of discovery.

Because of Plaintiff's unjustified non-disclosure and the resulting prejudice to Defendant

Officers, exclusion of these witnesses at trial is mandatory pursuant to Fed. R. Civ. P. 37(c)(1).

"All evidentiary questions begin with Federal Rule of Evidence 402, which contains the

general principle that "[r]elevant evidence is admissible" and "[i]rrelevant evidence is not."

*United States v. Gomez*, No. 12-1104 (7th Cir. 2014). Relevant evidence must be "both

probative…and material." *Id.* From that point, the analysis then examines the "sufficiency" of

the evidence, meaning Plaintiff has to show that proof exists sufficient to support a finding that the fact does exist." *Id.*

Plaintiff's counsel admits it is inadmissible propensity evidence of Officer Petrenko's supposed "pattern of conduct of using excessive force and then lying about events after his misconduct," which is barred by Rule 404(b). *See* Ex. G (London E-mails). None of the C.R. allegations are in any way similar to the incident at issue in this case:

1. Calvin Cobbs alleged that Officer Petrenko pushed him against a wall, kneed him, and slammed him to the ground while responding to a domestic violence incident. Deborah Mapp was present during the incident. Cobbs did not cooperate with IPRA's investigation, which concluded the allegations were unfounded.

2. Clifford Trimble alleged that Officer Petrenko yelled profanities and strangled him during a confrontation over Trimble's unleashed dog. Abigale Wall witnessed the encounter, and gave a statement to IPRA in which she denied Trimble's allegations. Although IPRA concluded the allegations of profanities and strangling were unfounded, it found that Officer Petrenko had violated a departmental rule by neglecting to complete a required report.

3. In a C.R. that involved no allegations that force was used, the IPRA investigator concluded that Officer Petrenko and other officers had violated a CPD regulation. Officer Petrenko and the other officers appealed IPRA's finding, and prevailed before an arbitrator, who overturned IPRA's finding after hearing the evidence.

None of these situations or allegations are in any way similar to Defendant Officers' use of lethal force when responding to an in-progress armed robbery with very limited information. *See Akbar v. City of Chicago*, No. 06 C 3685, 2009 WL 3335364, at *2 (N.D. Ill. Oct. 14, 2009) (prior bad acts that were factually dissimilar and temporally distant to the underlying incident were not relevant and therefore barred).

This evidence is also inadmissible because it is insufficient to support a jury finding that the defendant committed the similar act. *See Edwards v. Thomas*, 31 F.Supp.2d, 1069, 1074 n. 7 (N.D. Ill. 1999) (citing *Huddleston v. United States*, 485 U.S. 681, 685 (1981)). IPRA concluded

that the allegations regarding force and profanity unfounded – i.e., the evidence proved that the alleged conduct never happened.

Finally, even if it cleared the bars of Rules 401 and 404(b), C.R. evidence would be barred by Rule 403. If C.R. evidence were admitted, then Defendants would be forced to disprove the allegations, resulting in a mini-trial for every C.R. introduced. *See Jones v. Harelman,* 869 F.2d 1023, 1027 (7th Cir. 1989) (admission of 404(b) evidence would necessitate "trial within a trial"); *Vukadinovich v. Zentz,* 995 F.2d 750, 755-56 (7th Cir. 1993) (complaints against officers arising from dissimilar events properly excluded). This would delay the proceedings, and would improperly shift the focus of the trial away from Plaintiff's claims. Furthermore, the probative value of unrelated lawsuits or complaints against Defendant Officers is greatly outweighed by the danger of unfair prejudice. Faced with a barrage of unrelated allegations of misconduct against Defendant Officers, a jury would be more likely to decide the case on an improper basis rather than on the actual evidence presented. *Manuel v. City of Chicago*, 335 F.3d 592 (7th Cir. 2003) (slight probative value of prior bad acts evidence outweighed by potential for unfair prejudice, juror confusion and delay). All evidence of prior lawsuits or C.R.s against Defendant Officers should therefore be barred. Fed. R. Evid. 401-404.

**Motion *in Limine* #8 - Improper Use of Force Arguments**

Based on his deposition questions, Defendants anticipate Plaintiff will make a variety of improper arguments related to Defendant Officers' use of force. For example, Plaintiff should be barred from suggesting Defendant Officers fired too many times. It is undisputed that each Defendant Officer fired at Plaintiff in a single burst of rapid gunfire, causing Plaintiff to

withdraw back into the store. Such suggestions would misstate the law. In *Plumhoff v. Rickard*, the Supreme Court considered the "contention that, even if the use of deadly force was permissible, [the officers] acted unreasonably in firing a total of 15 shots," holding as follows: "We reject that argument. It stands to reason that, if police officers are justified in firing at a suspect…the officers need not stop shooting until the threat has ended…if lethal force is justified, officers are taught to keep shooting until the threat is over." 134 S. Ct. 2012, 2022 (2014).

Plaintiff should also be barred from offering criticism of Defendant Officers' pre-shooting tactics or suggesting they excuse or nullify Plaintiff's own actions. For example, Plaintiff contends Defendant Officers unreasonably put themselves in harm's way by approaching the site of the armed robbery with no cover available, and that they should have fired a warning shot. Even if Defendant Officers' "various decisions…were unjustified, they did not constitute a 'seizure' and, as a result, are not subject to any Fourth Amendment scrutiny." *Tom v. Voida*, 963 F.2d 952, 956 (7th Cir. 1992); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992) ("An officer's "pre-seizure conduct is not subject to Fourth Amendment scrutiny"). Such claims are irrelevant and misleading.

Suggestions that Defendant Officers should have used less lethal force should also be barred. The only issue in this trial is whether the force used was reasonable. *Graham v. Connor*, 490 U.S. 386 (1989). The Fourth Amendment does not require officers to use all feasible alternatives to deadly force, or to use the least or even a less intrusive alternative to deadly force, so long as the use of deadly force is reasonable under *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Graham v. Connor*. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003), citing *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994) and *Pena v. Leombruni*, 200 F.3d 1031, 1033 (7th

Cir. 1999)(although the application of measures to render a person harmless without killing or wounding him may be desirable, in a case in which the individual presented a serious threat of bodily harm, failure to adopt lesser measures would be no more than negligence, which is not actionable under § 1983). It would be misleading and unfair for Plaintiff to offer evidence or argument that Defendant Officers' split-second decisions to discharge their weapons were wrong because Plaintiff can now (with the benefit of hindsight and information not known to the officers at the time) think of other less lethal options. Fed. R. Evid. 403.

Plaintiff should be barred from suggesting that Defendant Officers recklessly endangered or owed a duty of care to bystanders such as Plaintiff's father-in-law, Khader Aruri. The Supreme Court rejected this argument in a case where police fired at the driver of a vehicle: "In arguing that too many shots were fired, respondent relies in part on the presence of [an innocent passenger] in the front seat of the car, but we do not think that this factor changes the calculus. Our cases make it clear that 'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.'" *Plumhoff*, 134 S. Ct. at 2022, citing *Alderman v. United States,* 394 U.S. 165, 174 (1969). Conduct toward anyone other than Plaintiff is irrelevant; its nonexistent probative value is dwarfed by unfair prejudice to Defendants.

Suggestions that Defendant Officers had a duty to determine whether Plaintiff was the offender or victim of the armed robbery before they fired at him should be barred because that is not the law. The relevant legal inquiry is whether or not Defendant Officers' actions were reasonable from the perspective of a reasonable police officer. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020 (2014). Therefore, the only relevant question is whether or not Plaintiff's actions presented a threat of death or great bodily harm to Defendant Officers or others – not whether or not Plaintiff had just been the victim of a crime. Suggestions to the contrary would mislead the

jury, confuse the issues, and unfairly prejudice Defendants by allowing Plaintiff to garner sympathy by harping on his victimization by the robbers - information that Defendant Officers undisputedly did not have at the time they decided to use force.

**Motion *in Limine* #9 – City's Deficiencies in Hiring, Training or Supervising Officers**

Evidence or argument that the City of Chicago improperly trains, hires, or supervises its police officers should be excluded because it is irrelevant to the issues in this case, highly prejudicial, and likely to confuse the jury. Fed. R. Evid. 401 and 403. In Illinois, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Thus, if the Defendant Officers are not liable to Plaintiff in the instant case, neither can the City be liable to Plaintiff. *See Guidry v. Boyd*, No. 06 C 1600, 2007 WL 2317174, *15 (N.D. Ill. July 17, 2007). Plaintiff's *Monell* policy claim was dismissed with prejudice as of September 14, 2015. Therefore, any reference, question or testimony that would imply or suggest that the City improperly trains, disciplines or investigates police officers is irrelevant to the claims of this lawsuit and highly prejudicial, and thus should be barred. Fed. R. Evid. 401 and 403.

**Motion *in Limine* #10 – Generalized Allegations of Cover-Up or "Code of Silence"**

Suggestions that police officers generally cover-up or conceal fellow officers' misconduct (including references to a "code of silence," etc.) should be excluded such evidence because it is irrelevant and would be extremely prejudicial to Defendant Officers. FED. R. EVID. 401, 403. Such generalized evidence has no specific relationship to the officers or other police department personnel who may testify in this case, and it is not relevant to the jury's determination of their credibility. *See Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238, at *4 (N.D. Ill. Jan. 22, 1996) (granting unopposed motion to exclude evidence that police officers generally protect or cover-up other officers' misconduct); *Shaw v. City of New*

*York*, No. 95 Civ. 9325, 1997 WL 187352, at *7-9 (S.D.N.Y. Apr. 15, 1997) (excluding evidence of blue "code of silence" by which New York City police officers protect fellow officers and lie if necessary to do so). Moreover, as the court warned in *Shaw*:

> If [evidence of a police "code of silence"] were held admissible here, it logically would be admissible in every suit, civil or criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer. Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified. The Court declines to establish such a precedent.

*Shaw*, 1997 WL 187352 at *9. Given its lack of connection to the specific issues and persons in this case, "its probative value is very, very slim, and its prejudicial [impact] is very, very high." *Shaw*, 1997 WL 187352, at *8 (*quoting Williams v. City of New York*, 94 Civ. 6234, unpublished transcript (S.D.N.Y. Sept. 6, 1996)).

### Motion *in Limine* # 11 – Requests to Punish or "Send a Message" to the City

Plaintiff should be barred from making any argument that the jury should "send a message" to the City with its verdict or that the jury should somehow punish the City with its verdict. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. As a matter of law, Plaintiff cannot recover punitive damages from the City. *See* 745 ILCS 10/2-102; *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981). Accordingly, Plaintiff should not be allowed to imply to the jury that punishment can serve as a legitimate basis for an award against the City. Furthermore, it would cause unfair prejudice by misleading the jury to believe punitive damages would be paid by the City rather than by Defendant Officers, who must pay any punitive damages award out of their own pockets. FED. R. EVID. 403.

**Motion *in Limine* # 12 - Unrelated Allegations of Police Misconduct**

All references to unrelated police misconduct should be excluded because it is irrelevant and highly prejudicial. Fed. R. Evid. 401-403. Defendant Officers do not condone any instance of police misconduct. They should not be associated with or forced to defend the conduct of others before the jury. Reference to unrelated allegations of police misconduct at trial would serve only to activate jurors' prejudices and stereotypes, and to improperly inflame the jury against the police in general and Defendant Officers in particular. *See Saunders v. City of Chicago*, 320 F.Supp.2d 735, 740 (N.D. Ill. 2004) (granting identical motion); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at * 5 (N.D. Ill. July 29, 2011) (Dow, J); *Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238 (N.D. Ill. Jan. 22, 1996) (Conlon, J).


**Motion *in Limine* # 13- City Employees Are Paid to Testify/Professional Witnesses**

Plaintiff should be barred from referring to the fact that some witnesses employed by the City of Chicago are testifying while "on the clock" or as part of their job duties, are professional witnesses, or otherwise are being paid for their testimony. Fed. R. Evid. 401-403. The police union's collective bargaining agreement requires that officers receive compensation for time spent performing tasks required by and related to their employment, which includes providing testimony when legally required. The agreement also requires that Defendant Officers cooperate in their defense and appear at trial. Furthermore, Defendant City of Chicago has voluntarily agreed (at no cost to Plaintiff) to facilitate the attendance of City employees that Plaintiff wants to call as witnesses against Defendants. It would be disingenuous and unfair for Plaintiff to repay the City's professional courtesy by presenting in an unfair light the very measures required to make Plaintiff's witnesses available in the first place. Such argument or evidence is unfairly

prejudicial, misleading and distracting for the jury, and force Defendants to waste even more time explaining the context of an irrelevant collateral issue.  FED. R. EVID. 403.

## Motion *in Limine* #14 - Solicitation of Media Coverage

Parties, counsel and anyone acting on their behalf should be barred from soliciting media coverage or communicating to the public or with members of the media about this lawsuit Defendant Officers or the incident at issue in this case until the jury has delivered its verdict. Local Rule 83.56.6 provides that "a lawyer shall not make an extrajudicial statement the lawyer knows or reasonably should know is likely to be disseminated by public media and, if so disseminated, would pose a serious and imminent threat to the fairness of an adjudicative proceeding."  The rule's committee notes observe that the curtailment of free speech to ensure a fair trial is particularly necessary when the trial is by jury. *Id.*  Media coverage would likely include inadmissible evidence or arguments, and could be consumed by potential jurors, thereby depleting the available pool of unbiased potential jurors and diminishing the parties' opportunity for a fair trial.

## Motion *in Limine* #15 – Plaintiff's Medical Bills

Plaintiff should be barred from presenting evidence of medical bills or expenses.  During discovery, Plaintiff produced only the medical bills attached as Exhibit H, which set forth only the gross amounts  billed without indicating what portions thereof were actually paid by Plaintiff or on his behalf, or what portions Plaintiff ultimately became obligated to pay.  Indeed, many of them explicitly say "PAY THIS AMOUNT 0.00."  "In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred  the medical expenses  because  of injuries resulting  from  the defendant's

negligence, and that the charges were reasonable for services of that nature." *Haack v. Bongiorno*, 2011 WL 862239, *6 (N.D.Ill. 2011)(Nolan, J.). Such evidence can be presented in the form of paid medical bills, or through testimony of an expert with "knowledge of the services rendered and the usual and customary charges for such services." *Id.* Because Plaintiff never (a) produced documents sufficient to show the paid portions of his medical bills, or (b) disclosed expert opinions regarding the nature and necessity of services rendered or the usual and customary charges for such services, he should be barred from presenting evidence of medical bills and expenses.

Dated: October 15, 2015               Respectfully submitted,

                                      */s/ Lindsay Wilson Gowin*
                                      Assistant Corporation Counsel (ARDC #6284270)
                                      City of Chicago – Federal Civil Rights Division
                                      30 North LaSalle Street, Suite 900
                                      Chicago, Illinois 60602
                                      (312) 744-4746 (P)
                                      (312) 744-6566 (F)

## CERTIFICATE OF SERVICE

I hereby certify that I have caused true and correct copies of the above and foregoing document to be served upon all parties of record via ECF on October 16, 2015.

                                      */s/ Lindsay Wilson Gowin*
                                       Assistant Corporation Counsel