IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BASSIL ABDELAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 13 C 1851 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) | Judge Pallmeyer |
| OFFICER MIGUEL TORRES, OFFICER ROLANDO RUIZ, OFFICER THOMAS PETRENKO, PAT CAMDEN, THE TRIBUNE COMPANY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants, Miguel Torres, Rolando Ruiz, Thomas Petrenko ("Defendant Officers"), and the City of Chicago, by their attorneys, and pursuant to Fed.R.Civ.P. 50(a), respectfully move for judgment as a matter of law in their favor and against the plaintiff. In support of their motion, Defendants state:

### Introduction

Plaintiff has been fully heard on all of his claims, including his Fourth Amendment claim that Defendant Officers' use of deadly force was unreasonable under the circumstances. Defendants acknowledge there is a disputed issue of fact based on the testimony presented: plaintiff claims he exited his store, picked up a gun left by robbers as they fled his store, and did not point it at Defendant Officers; Defendant Officers maintain plaintiff exited his store with a gun raised with both hands at shoulder level and pointed at them. However, for purposes of this motion, Defendants accept plaintiff's testimony, as the court must, in the light most favorable to him. Even accepting plaintiff's version of the events as true, there is no Fourth Amendment violation based on the circumstances confronting the Defendant Officers, and plaintiff cannot

prevail on his excessive force claim. Defendant Officers are also entitled to judgment as a matter of law on plaintiff's federal claims based on qualified immunity. Further, if Defendants are entitled to judgment as a matter of law on Plaintiff's Fourth Amendment excessive force claim, it follows that they are entitled to judgment as a matter of law as to Plaintiff's remaining claims. Moreover, Plaintiff's state law claims fail as a matter of law. Lastly, Defendant Officers Torres and Petrenko are entitled to judgment as a matter of law as to Plaintiff's claim for false arrest because the evidence in the record demonstrates that neither officer was involved in Plaintiff's handcuffing.

## Standard of Review

Under Rule 50(a), the court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed.R.Civ.P. 50(a). The standard for granting judgment as a matter of law "mirrors" the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986). Thus, the court must view all the evidence in the light most favorable to the nonmoving party, and may not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 150. A legally sufficient evidentiary basis to find for a party must be more than a mere scintilla. *Anderson*, 477 U.S. at 252; *Filipovich v. K&R Exp. Systems, Inc.*, 391 F.3d 859, 863 (7th Cir. 2004). The question for the court is whether there is sufficient evidence upon which the jury could properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. *Anderson*, 477 U.S. at 252.

## Fourth Amendment Excessive Force Claim

Whether a police officer's use of force, including deadly force, was reasonable under the circumstances must be judged from the perspective of "a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "allow for the fact that police officers are often forced to make split-second judgments – under circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, ___ U.S. ___, 134 S.Ct. 2012, 2020 (2014), quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). If an officer reasonably believes the suspect's actions place him, his partner, or others in the immediate vicinity in imminent danger of death or serious bodily harm, the officer may use deadly force. *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988)(*en banc*). "Police may use even deadly force if the 'the suspect poses a threat of serious physical harm, either to the officer or to others.'" *Bell v. Irwin*, 321 F.3d 637, 639 (7th Cir. 2003), quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Furthermore, officers need not wait until the suspect actually uses the weapon against them before an imminent danger exists justifying the use of deadly force, even where the officers' belief that danger exists is based on appearances. *Henning v. O'Leary*, 477 F.3d 492 (7th Cir. 2007); *DeLuna v. City of Rockford*, 447 F.3d 1008 (7th Cir. 2006); *Ford v. Childers*, 855 F.2d 1271 (7th Cir. 1987)(*en banc*).

In *Henning*, the court determined an officer did not have to wait to use deadly force until a gun was used against him and his fellow officers where a suspect resisted the officers' attempt to take him into custody and a struggle ensued. During the struggle, one officer's gun came loose and he was restrained in his attempt to retrieve his gun from underneath the suspect. Believing the suspect's hand might be on his gun, the officer warned his fellow officers.

3

Another officer then fired his weapon at the suspect resulting in the suspect's death. 447 F.3d at 493-95. Analyzing the excessive force claim, the court explained that "[d]eadly force . . . is reasonable where an officer has reasonable cause to believe that the suspect poses a danger of serious bodily harm, such as when the officer believes the suspect has a weapon or has committed a violent crime." *Id.* at 496, citing *Garner*, 471 U.S. at 11. In determining the officer who used deadly force had the requisite reasonable cause under the circumstances, the court concluded "[p]olice officers cannot be expected to wait until a resisting arrestee has a firm grip on a deadly weapon and completely freed himself from officers trying to subdue him before taking action to ensure their safety." *Id.* at 496.

In *DeLuna*, the court found an officer's use of deadly force was reasonable under circumstances in which a suspect continued to approach and verbally threaten the officer despite his instructions to the suspect to cease his actions. The suspect ultimately lunged toward the officer as he stumbled while walking backward to create distance from the approaching suspect. 477 F.3d at 1010-13. Although the officer knew the suspect had a history of violence and was known to carry and sell weapons, he did not know whether the suspect possessed a weapon on this occasion. *Id.* at 1012. The court determined the suspect's actions created the actual danger of imminent serious injury, regardless of whether the officer saw a gun or believed the suspect was reaching for his gun. *Id.* at 1013. It also concluded the officer "need not wait until there is a physical struggle for control of his weapon before a situation presents an imminent danger of serious physical injury." *Id.*

Similarly, in *Ford*, the court determined that an officer's use of deadly force against a fleeing bank robbery suspect, who had not threatened the officer with a weapon, was objectively

4

reasonable under the circumstances because the officer reasonably believed the suspect was armed and dangerous based on his observations, even though he had not seen a weapon in the suspect's hand. 855 F.2d at 1275. The court further recognized that "a reasonable belief that danger exists may be formed by reliance on appearances." *Id.*

The Defendant Officers testified they were responding to a simulcast call of a robbery in progress at a convenience store located at Lake and Laramie Streets. The officers were less than a mile from that location when they monitored the call. When they arrived at Lake and Laramie in their respective vehicles, events transpired rapidly. Defendant Officer Ruiz testified he and the officers in his vehicle obtained information from a citizen outside a convenience store that the robbery was occurring at the beauty supply store across the street. He made a U-turn, parked his vehicle adjacent to the strip mall where the beauty supply store was located, exited the vehicle, and approached the store with his fellow officers from west to east. The lights in the store were completely off and the officers could not see inside. As one of the officers shined his flashlight into the darkened store, an individual ran out of the entrance door, fled to the east and was pursued by Officer Duran. Almost immediately thereafter, two more individuals ran out the same door and fled in a northeasterly direction across the parking lot. Officer Ruiz was about to join Officers Jones and Cifuentes' pursuit of these two suspects when he noticed a fourth individual (now known to be plaintiff) coming out of the entrance door of the store. Defendant Officers Torres and Petrenko testified that as they exited their vehicle they heard gunshots and crossed Laramie from west to east. As they approached the parking lot to assist Ruiz and the other officers, Officer Torres saw plaintiff coming out of the entrance door of the store. Officer

5

Petrenko saw Plaintiff after he exited the store. At the point plaintiff exited the store, the Defendant Officers had been on the scene for less than a minute.

Against this backdrop of rapidly evolving events, plaintiff testified while he was on the floor of the store the last robber tripped over him. The robber quickly got up and ran through the front door, dropping the weapon outside as he fled. Plaintiff got up from the floor, pushed the door open as far as it could go, stepped out onto the sidewalk, bent over at his waist, and picked up the gun dropped by the robber in his right hand. As he stood straight up with the gun in his hand he was shot. He did not see or hear the police. Plaintiff did not hear anyone say anything to him before he was shot, and had no idea who was shooting at him. Plaintiff further testified that he dropped the gun after he was shot. The Defendant Officers testified they stopped shooting once the threat to their safety was eliminated.

From the perspective of the Defendant Officers, plaintiff's act of picking up the gun from the sidewalk presented an imminent threat of death or serious injury under the circumstances then confronting them and based on the information they possessed. During a robbery in progress, Plaintiff exited the store and picked up a gun immediately after three robbery suspects had fled from the store. When plaintiff exited the store and picked up the gun, the Defendant Officers did not know he was the store owner. They learned that information after plaintiff was shot, and therefore it cannot be considered in determining whether their use of force was reasonable. *Graham*, 490 U.S. at 396; *Sherrod*, 856 F.2d at 805. Plaintiff testified he was picking up the gun to protect himself because the store is located in a risky, high traffic area, but that information was also unknown to the officers when they made their decisions to fire their weapons. Nor could they have known plaintiff's intentions. From the Officers' perspective, and

6

relying on appearances, plaintiff's actions were not that of a victim seeking aid, but rather that of a suspect/offender making a serious threat to their safety. The Defendant Officers were entitled to rely upon on those appearances in forming their belief that an imminent threat to their safety existed, *Ford*, 855 F.2d at 1275, and under the circumstances confronting them, their belief based on those appearances was reasonable, even if it was mistaken. *Sherrod*, 856 F.2d at 807. Once plaintiff picked up the gun, the Defendant Officers were not required to wait until the gun was used against them in order to ensure their safety given the rapidly evolving and uncertain events confronting them. *Henning*, 477 F.3d at 496; *DeLuna*, 447 F.3d at 1013.

Given the imminent threat plaintiff posed to their safety by his actions and appearances, the Defendant Officers' use of deadly force was objectively reasonable under the circumstances, and therefore, plaintiff's Fourth Amendment rights were not violated. Additionally, because Defendant Officers were justified in using deadly force to terminate plaintiff's threat, the amount of times they fired at plaintiff does not create a separate Fourth Amendment violation. *Plumhoff*, 134 S.Ct. at 2022. Thus, when plaintiff's evidence is viewed most favorably to him, his own version of events is not legally sufficient to sustain his burden of proof on his Fourth Amendment excessive force claim. Therefore, Defendants are entitled to judgment as a matter of law in their favor.

## Qualified Immunity

The Defendant Officers are also entitled to judgment as a matter of law based on qualified immunity which they have asserted as an affirmative defense. Qualified immunity protects public officials performing discretionary functions from civil liability for damages so long as their conduct "does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308 (2015)(*per curiam*) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is a question of law for the court to decide. *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988). The analysis requires a two-pronged test. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court determines whether the alleged conduct establishes a constitutional violation. *Id.* If a constitutional violation could be established on the facts alleged, the court asks whether the constitutional standards were clearly established at the time of the violation. *Id.* The court, in its discretion, decides in which order to answer this two-step inquiry. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). "Although qualified immunity is an affirmative defense, once the defense is raised, it becomes plaintiff's burden to defeat it." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)(citations omitted).

As explained above, taking plaintiff's version of events in the light most favorable to him, his Fourth Amendment right to be free from excessive force was not violated. Indeed, "no right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts." *Sherrod*, 856 F.2d at 805, quoting *Young v. City of Killeen, Tx.*, 775 F.2d 1349, 1353 (5th Cir. 1985); *Ford*, 855 F.2d at 1276.

Even if plaintiff could establish a constitutional violation, the Defendant Officers would still be entitled to qualified immunity because no clearly established law precluded their use of deadly force at the time of the incident given the situation that confronted them. The Supreme Court has repeatedly cautioned courts that the clearly established right must not be drawn from general principles. *See*, *Mullenix*, 136 S.Ct. at 308; *see also Plumhoff*, 134 S.Ct. at 2023. Rather, the crucial question is whether the officer acted reasonably in the particular

8

circumstances that he faced. *Plumhoff*, 134 S.Ct. at 2023; *Saucier*, 533 U.S. at 201-02. In other words, the relevant inquiry is whether existing precedent established that the officer acted unreasonably under the circumstances he faced "beyond debate." *Mullenix*, 136 S.Ct. at 309, quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Taking the evidence in the light most favorable to the plaintiff, the Defendant Officers could have reasonably believed their use of deadly force was reasonable given plaintiff's act of picking up a gun on the heels of three robbery suspects quickly fleeing the store the officers were responding to during a robbery in progress call. An officer faced with these circumstances could have reasonably believed plaintiff's actions posed an imminent threat to him and his fellow officers such that deadly force was appropriate. In light of the decisions in *Henning*, *DeLuna* and *Ford*, it is difficult to understand how Defendant Officers could have believed their use of deadly force would be inappropriate under these circumstances. Because no clearly established law precluded their use of deadly force under the circumstances confronting them, the Defendant Officers are entitled to qualified immunity and judgment as a matter of law on Plaintiff's Section 1983 excessive force claim.

Defendant Officers are likewise entitled to qualified immunity and judgment as a matter of law on plaintiff's Section 1983 false arrest claim. Because they could have reasonably believed their use of lethal force to be reasonable, as discussed above, it follows that they would have had at least arguable probable cause to handcuff the plaintiff because the handcuffing was premised on the same actions that led to the shooting. As stated by the Supreme Court in *Tennessee v. Garner*, "[d]eadly force may be used if the officer has *probable cause* to believe that the armed suspect (1) 'poses a threat of serious physical harm, either to the officer of to

9

others,' or (2) 'committed a crime involving the infliction or threatened infliction of serious physical harm' and is about to escape." 471 U.S. 1, 11-12 (1985) (emphasis added). Here, if the Defendant Officers had probable cause to use lethal force against plaintiff for his actions, they also had probable cause to handcuff him for those actions. Moreover, the Defendant Officers observed the plaintiff pick up a gun on the sidewalk. They could have reasonably believed that they had probable cause to handcuff the Plaintiff for unlawful use of a weapon because he possessed a weapon on the public way. Accordingly, the Defendant Officers are entitled to qualified immunity on Plaintiff's Section 1983 false arrest claim and this motion for judgment as a matter of law should be granted.

**False Arrest, Conspiracy, Battery, Assault, IIED, Wilful and Wanton Conduct**

The Defendant Officers are entitled to judgment as a matter of law on plaintiff's remaining Section 1983 claims of false arrest and conspiracy and state law claims of battery, assault, wilful and wanton conduct, and intentional infliction of emotional distress (IIED) because their use of force was reasonable under the Fourth Amendment. As discussed above, the Defendant Officers are entitled to judgment as a matter of law on plaintiff's excessive force claim because plaintiff's act of picking up the gun from the sidewalk presented an imminent threat of death or serious injury under the circumstances then confronting the Defendant Officers and based on the information they possessed. It therefore follows that if the Defendant Officers' use of force was reasonable under the Fourth Amendment, then they did not commit false arrest, battery, assault, IIED, or wilful and wanton conduct. Indeed, as argued above, if the Defendant Officers had probable cause to discharge their weapons at plaintiff, then they would have probable cause to handcuff him for his threatening actions and they are entitled to judgment as a

matter of law on plaintiff's Section 1983 false arrest claim. Officers Torres and Petrenko are also entitled to judgment as a matter of law on this claim because there is no evidence that either officer was involved in handcuffing plaintiff.

Moreover, if plaintiff's Section 1983 claims of false arrest and excessive force fail, any conspiracy claim based on those claims would likewise fail. Under Section 1983, conspiracy is not a freestanding constitutional violation; a plaintiff must prove that there is an underlying constitutional injury. *Hobbs v. Cappelluti*, 899 F.Supp.2d 738, 753 (N.D. Ill. 2012). Defendant Officers are also entitled to judgment as a matter of law on plaintiff's section 1983 conspiracy claim because there is not sufficient evidence to support a conspiracy claim. This is especially true for Officers Torres and Petrenko, who did not even talk to Officers Ruiz or Duran before the Plaintiff was handcuffed.

Furthermore, if the Defendant Officers' use of force was reasonable under the Fourth Amendment, then it would follow that their conduct was not wilful and wanton – a requirement for plaintiff's state law claims of battery, assault, and wilful and wanton conduct. Plaintiff would have to show that conduct that is reasonable under the Fourth Amendment was somehow wilful and wanton under Illinois state law. The Seventh Circuit found it hard to reconcile such a result in *DeLuna*. 447 F.3d at 1013. Likewise, conduct that is reasonable under the Fourth Amendment would not be extreme and outrageous, a requirement of plaintiff's IIED claim. Accordingly, Defendant Officers are entitled to judgment as a matter of law on plaintiff's remaining Section 1983 claims of false arrest and conspiracy and state law claims of battery, assault, wilful and wanton conduct, and intentional infliction of emotional distress (IIED).

**State Law Claims**

Defendant Officers are also entitled to judgment as a matter of law on plaintiff's state law claims because they fail as a matter of law. Indeed, all of state-law claims (battery, assault, IIED, wilful and wanton conduct) against Defendant Officers are barred by the Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8-101. The shooting occurred on March 14, 2012. Officers Torres, Petrenko and Ruiz were first named as defendants in Plaintiff's Second Amended Complaint filed on July 10, 2013.

Further, Plaintiff's wilful and wanton claim is not cognizable. "Willful and wanton conduct" is not a claim recognized in Illinois law. *Sparks v. Starks*, 367 Ill.App.3d 834, 837 (1st Dist. 2006). Furthermore, even if Illinois law recognized a cause of action for wilful and wanton conduct, the wilful and wanton count still fails as a matter of law because it is duplicative. "Wilful and wanton conduct" is an element of plaintiff's state law claims for assault and battery. Accordingly, a separate claim for "Wilful and Wanton Conduct" would be duplicative.

**Conclusion**

WHEREFORE, for the reasons set forth above, Defendants respectfully request that this Court grant their request for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) and for any other relief this Court deems just.

Respectfully submitted,


/s/ Joseph M. Polick
JOSEPH M. POLICK
*On behalf of the Defendants*
THE SOTOS LAW FIRM, P.C.
550 E. Devon Avenue, Suite 150
Itasca, IL 60143
(630) 735-3321
Atty. No. 6203682
jpolick@jsotoslaw.com

/s/ Marion C. Moore
Marion C. Moore
Assistant Corporation Counsel
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-1056 (P)
(312) 744-6566 (F)
Atty. No. 6302566