# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BASSIL ABDELAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 1851 |
| ) | |
| CITY OF CHICAGO, a municipal ) | Judge Rebecca R. Pallmeyer |
| corporation, OFFICER MIGUEL TORRES, ) | |
| OFFICER ROLANDO RUIZ, and OFFICER ) | |
| THOMAS PETRENKO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

On March 14, 2012, Plaintiff Bassil Abdelal was the victim of an armed robbery at a beauty supply store where he worked. The offenders robbed Mr. Abdelal at gunpoint and then fled the store, dropping weapons on the sidewalk as they ran. Abdelal exited the store and seized a gun lying on the sidewalk. Officers summoned to the scene mistook Abdelal for one of the robbers and shot him multiple times. He sued three Chicago police officers—Defendants Ruiz, Petrenko, and Torres—alleging that they falsely arrested and unreasonably seized him, used excessive force, committed assault and battery, and inflicted emotional distress. A jury found in Defendants' favor on all of these claims, however. Mr. Abdelal now moves for a new trial pursuant to Fed. R. Civ. P. 59. As explained here, the motion is denied.

## Evidence Supports the Jury's Verdict

At the heart of Abdelal's challenge to the verdict is his contention that it is unsupported by the credible evidence. Such a challenge is notoriously difficult to mount. A new trial is appropriate "only if the jury's verdict is against the manifest weight of the evidence," meaning that "no rational jury" could have rendered a verdict against Abdelal. *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). In determining whether this test is met, the court is expected to view the evidence in the light most favorable to the prevailing parties, and to sustain the verdict

so long as it is supported by a "reasonable basis" in the record. *Id.* (internal citation and quotation mark omitted).

Abdelal testified that when he exited the store, he picked up the gun, kept it pointing at the ground, and never "assum[ed] a shooter's stance." (Pl.'s Reply in Supp. of Mot. for New Trial ("Reply") [215] at 4.) Abdelal did not see or hear the police as they approached the building. (*Id.*) Abdelal has never had a gun, has never had firearms training, and says he never pointed the gun at police officers. (*Id.*) The officers' versions of the events of March 14 were different, however. Officer Torres testified that he heard a gunshot as he exited his vehicle. (*Id.* at 5.) He observed Abdelal pointing a gun at a tactical officer (Officer Ruiz), who was standing directly in front of the beauty supply store, a car length away from Abdelal but at a considerable difference from Torres himself. (*Id.* at 4.) Torres testified that, as Abdelal moved out of the doorway, Abdelal pointed the gun at Torres; Torres ordered Abdelal to drop the gun and, when Abdelal failed to do so, Torres shot him six to nine times. (*Id.*) Abdelal finds it implausible that Torres would leave him lying on the ground to pursue another of the apparent offenders, but that is what Torres testified he did. (*Id.* at 5.)

A second officer, Defendant Ruiz, testified that he parked in a space near the door of the shop, saw Abdelal, and ordered him to drop the gun. (*Id.* at 6.) Abdelal had the gun trained on Ruiz, he claims, and refused to drop the gun when ordered to do so. (*Id.*) Ruiz shot at Abdelal himself he does not recall any other officer ordering Abdelal to drop the weapon or shooting at Abdelal. (*Id.*)

A third Defendant, Officer Petrenko, recalled hearing shots as he approached the store, hearing Officer Torres give verbal commands, and observing Abdelal pointing the gun at Petrenko himself and Torres. (*Id.* at 6-7.)

Abdelal sees these accounts as wildly inconsistent. He contends that the way the officers described things "simply could not happen." (*Id.* at 7-8.) He characterizes the Defendants' version of events as "a baffling array of improbabilities, inconsistencies, and

2

contradictions." (*Id.* at 3.) In fact, however, critical facts are undisputed: that the officers were summoned to the store in response to a call concerning an armed robbery; that Abdelal tripped one of the robbers and seized his weapon; and that Abdelal was standing at or near the entrance to the door with a gun in his hand when officers approached. What is disputed is Abdelal's assertion that he did not point the gun at anyone. Two officers testified to the contrary, however, and the jury was entitled to believe them. Their testimony was corroborated, in part, by forensic evidence of Abdelal's injuries; the angle of the "through and through" injury to his arm suggested it was raised, not resting at his side, at the time the officers' shots were fired.

In determining whether police have used excessive force in violation of the Fourth Amendment, the relevant inquiry is "whether the officers' actions [were] objectively reasonable in light of the totality of the circumstances." *Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Particularly in this context, the court is mindful of the need for police offers to "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Viewed through that lens, the court is unable to conclude that the jury's verdict in this case is unsupported by the evidence.

**Plaintiff's Challenges to the Evidentiary Rulings Fail**

Plaintiff's remaining arguments challenge the court's evidentiary rulings, but the court stands by them.

    **A.    Subsequent Shots at Fleeing Suspect**

First, after the encounter leading to this lawsuit, Petrenko and other officers shot a fleeing robber, later determined to be unarmed. Defendants objected to introduction of this evidence pursuant to Rule 404(b) as nothing more than a showing of propensity. Before trial, the court pressed Plaintiff's counsel to offer a purpose for which the jury could properly consider

3

this evidence, but he was unable to do so. (Tr. of Proceeding, Nov. 6, 2015 [171] at 15-18.) In his motion for a new trial, Abdelal asserts that the fact that the officers shot an unarmed suspect shows they had a plan to do so and that they "intended and conspired to shoot and use excessive force on Abdelal and any moving person[.]" (Pl.'s Mot. for New Trial [204] at 9.) Respectfully, the court does not understand how the subsequent episode establishes any such "plan." Nor does the later shooting of unarmed suspects show, as Abdelal now suggests, that the police officers must have known earlier that Abdelal himself was a victim of the robbery or that they could not genuinely have feared for their safety when they saw him.

In *United States v. Gomez*, 763 F.3d 845, 853-54 (7th Cir. 2014), cited by Abdelal (Reply Memo at 9), the Seventh Circuit cautions against admission of "other act" evidence without careful consideration of the purpose for which it is offered. The issue for the jury is what the officers observed as they approached the Plaintiff in response to the 911 call. What they observed later (a suspect fleeing the scene who purportedly matched the 911 caller's description), and how they reacted to that later observation, casts no real light on the jury's determination.

### B.     Proposed Expert Testimony

Second, both sides sought to call expert witnesses to testify regarding police procedures. Plaintiff's proposed witness, Dr. James Williams, would have testified that shooting at an individual who poses no threat to officers is inconsistent with proper procedures, and that in this case, the fact that officers did not "take cover" when they saw Abdelal, confirms that they did not perceive him to be a threat. (Rep. at Dr. James Williams, Ex. A to Mot. in Lim. [113-1].) Plaintiff suggests he would also have testified that holding a weapon in a particular way was something taught to police trainees; the officers' expected testimony that Abdelal himself was holding the gun in that fashion was therefore not credible. (Reply 11-12.) Before trial, however, Defendants conceded that, if Abdelal was not a threat, shooting him was unjustified. It was also

4

undisputed that the weapon stance (the subject of Dr. William's expected testimony) is taught as part of police training, and that Abdelal lacks such training.

The court agrees with Plaintiff that admission of this testimony is not foreclosed by *United States v. Hall,* 165 F.3d 1095, 1102-04 (7th Cir. 1999) (affirming exclusion of expert testimony on the unreliability of eyewitness identifications) or *Thompson v. City of Chicago*, 472 F.3d 444,454 (7th Cir. 2006) (in excessive force case, affirming exclusion of police department's general orders pertaining to the use of force). The court must, however, consider whether the proposed expert testimony would assist the trier of fact in understanding the evidence presented or in determining a fact at issue. Both sides agreed that the disputed factual issue in this case was whether Abdelal was in fact pointing a weapon at police officers when he was shot. In light of Defendants' express agreement that, if he was not pointing a weapon, the shooting was unjustified, the court concluded that no expert testimony was necessary. Jurors have the capacity to make a finding on such straightforward factual issues without the need for an expert. Plaintiff was free to ask the officers themselves why they chose not to "take cover," and whether they learned the proper way to hold a gun in the police academy. To the extent Plaintiff expected Dr. Williams to testify that he himself believed the officers' accounts were not credible, such testimony is not admissible. The court concludes that excluding the expert did not prejudice Plaintiff.

    **C.**    **Testimony of ASA Carter**

Third, Plaintiff contends the courts should not have admitted the testimony of Assistant States' Attorney, Tim Carter, regarding his reasons for not charging Abdelal. At trial, Plaintiff objected to this testimony because Carter had been listed as a possible witness for "impeachment only." Defendants then sought to call Carter as a rebuttal witness. (Tr. of Proceedings, May 11, 2016 at 391-93.)[1] Specifically, Carter explained that he chose not to

---

[1] With the exception of that of November 6, 2015, all transcripts cited herein are in Exhibit A to Defendants' Response to the Post-Trial Motion [211-1].

5

initiate a prosecution of Abdelal, despite the officers' claim that Abdelal had pointed a weapon at them, in part because Abdelal had already suffered from the experience of being the victim of a robbery, and in part because Carter might need to call Abdelal as a witness in the case against the robbers themselves. (Reply 13.) This evidence was properly introduced to rebut Abdelal's argument that the fact that he was not charged confirms that he was never in fact a threat to the officers's safety. Abdelal was free to cross-examine Carter on this issue, and introduction of the evidence was not prejudicial. In any event, the factual issue in this case is not whether Abdelal posed an actual threat to the officers's safety, but whether they justifiably perceived him as such.

### D. Remaining Trial Issues are Waived

Abdelal has asserted three more challenges to the court's rulings, but all are waived. He contends the court improperly limited his effort to impeach Petrenko with records of past misconduct. In fact, at a pretrial conference, the court expressly permitted Plaintiff's counsel to ask Petrenko questions about his disciplinary violations (Tr. of Proceedings, Nov. 6, 2015, at 40), but not to call, as witnesses, persons who filed complaints against Petrenko. Plaintiff's counsel responded, "Fair enough" (*id.* at 41), and adhered to the court's rulings at trial. He did not suggest at that time that the court's ruling on the scope of this questioning prejudiced him.

Defendants moved to bar evidence of Plaintiff's medical bills, but the court denied that motion. (*Id.* at 49-50.) Plaintiff prepared a stipulation regarding his medical bills, but neglected to introduce it in his case in chief. When counsel realized the error, he asked the court for leave to reopen his case, and the court permitted him to do so. (Tr. of Proceedings, May 11, 2016, at 482.) Again, however, counsel failed to introduce the stipulation and only remembered it after Defendants' closing argument. (Tr. of Proceedings, May 12, 2016 at 547-50.)[2] Introducing it at

---

[2] The transcript is labeled "May 9, 2016" though the final day of the trial was May 12. ([197].)

that point, when Defendants no longer had any opportunity to comment on it to the jury, would have been improper. Plaintiff's objection to the exclusion of this evidence is deemed waived.

Finally, Plaintiff argues that the court erred in excluding what he refers to as evidence of a conspiracy. The court did, however, allow Plaintiff to introduce evidence that the officers conspired to falsely arrest him. (Tr. of Proceedings, May 4, 2016 at 8-11.) He did not in fact offer such evidence, apart from an effort to establish that being restrained while being transported reflects a conspiracy; but none of the Defendants were with Plaintiff in the ambulance or at the hospital. The jury's verdict in favor of Defendants on the substantive false arrest claim defeats any conspiracy theory. Finally, the court notes that Plaintiff did not tender a conspiracy instruction, and approved of the court's proposed final instructions on the record. This argument, too, is waived.

## **CONCLUSION**

Abdelal believes he was the victim of excessive force, and the court agrees there is cruel irony in the circumstance that after surviving an armed robbery, he was shot multiple times by police officers. The jury was aware of this circumstance, however, and was entitled, on this record, to conclude that the shooting did not violate Abdelal's constitutional rights. His motion for a new trial [204] is denied.

ENTER:

Date: March 31, 2017

_____
REBECCA R. PALLMEYER
United States District Judge